## APPEAL OF DELAWARE ELECTRIC & SUPPLY CO.

Docket No. 1776. Submitted June 1, 1925. Decided September 7, 1925.

Additional salaries for 1919 and 1920, voted to officers and employees of taxpayer in 1921, *held* not proper deductions from 1920 income.

*Morris D. Kopple, Esq.*, for the taxpayer.
*L. C. Mitchell, Esq.*, for the Commissioner.

Before IVINS, MARQUETTE, and MORRIS.

This appeal is from the determination of a deficiency in income and profits taxes for the year 1920 in the amount of $19,798.94, arising from the disallowance of a deduction for additional compensation to officers and employees of the taxpayer. The deficiency letter showed an overassessment for 1919 of $2,352.26. No question is raised relative to the correctness of the determination for 1919.

### FINDINGS OF FACT.

The taxpayer is a Delaware corporation with office located in Wilmington.

During the year 1920 its officers were: President and treasurer, Fred E. Stone; vice president, Herbert R. Smith; secretary, Earle Comegys.

These three individuals constituted the board of directors and together owned the majority of the taxpayer's capital stock. No meetings of stockholders were held subsequent to February 25, 1920, when the three individuals were elected directors, and the last previous stockholders' meeting was held on April 6, 1908.

The following was a part of the minutes of a meeting of the board of directors held March 14, 1921, at which the three individuals were present:

The treasurer presented his report for the year ending December 31, 1920, which after being read was approved and ordered filed. Owing to the unusual care and responsibility the board on motion decided that the officers be granted a bonus of $15,000 each as additional compensation for their work performed for the last two years. At the same time Mr. Smith for the employees presented to the board a request for further consideration on account of a number of the employees for the same reasons. On motion, bonuses were thereupon granted to G. E. Vandegrift for $2,000; J. P. Armor, W. J. Robinson, and J. H. Dallett for $250 each; George F. Leach for $150; A. I. Mousley, $50; W. E. James, S. Springer, E. P. Comegys, and J. E. Holley for $25 each; C. Brown for $20, all payable at the discretion of the treasurer.

The capital stock of the taxpayer outstanding was:

| | |
|---|---|
| 1910–1917 | $40, 300 |
| 1917 | [1] 100, 000 |
| 1918 | [1] 150, 000 |
| 1919 | 150, 000 |
| 1920 | 150, 000 |
| 1921 | [2] 200, 000 |

The taxpayer's books for 1920 had not been closed by March 14, 1921, and an entry was made as of December 31, 1920, of the total amount of $48,070 as bonuses for officers and employees. That amount was also deducted on the taxpayer's return for 1920, filed March 15, 1921. No part of the amount authorized by said vote of March 14, 1921, was charged against 1919 income, notwithstanding the fact that the authorization purported to be "additional compensation for their work performed for the last two years."

Two officers of the taxpayer, its president and its vice president, one of whom died in May, 1919, and the other in November, 1919, received no recognition for their services performed during 1919 up to the respective dates of their decease by way of any payments being made to their estates upon the authority of the vote of March 14, 1921, or otherwise.

All officers and employees entered the employ of the taxpayer for an agreed compensation to be paid weekly, with a mere understanding that they might receive more if the profits justified it and if the directors saw fit to pay more, but without any obligation on the taxpayer to pay more even though the profits permitted such payments.

The Commissioner disallowed the deduction of $48,070 from the income of the taxpayer for 1920 taken as additional salaries, and determined the deficiency in controversy.

### DECISION.

The determination of the Commissioner is approved.

### OPINION.

IVINS: The minute book of the directors' meetings and the testimony of the taxpayer's president and treasurer convince us that there was no liability on the taxpayer to pay its officers and employees any amount as compensation beyond what was actually and currently paid them. The testimony by the president and treasurer who also was the largest individual stockholder and had been with the company since 1895 was:

---

[1] Increased by stock dividends.

[2] Increased by issue of new stock at par in accordance with directors' resolution May 3, 1921.

Q. Was there any more than a general understanding among the officers that probably, if circumstances warranted, you would declare extra compensation?—A. No.

Q. Would you say that there was any legal liability on the part of the corporation to pay extra compensation to employees as distinguished from officers?—A. No.

Q. If you had died say in January, 1921, will you say that your estate would have had any legal claim against the corporation?—A. No.

Q. For extra compensation for 1920?—A. No. We did not know whether we had made any money.

Yet, after it was known that money had been made, and the vote purported to compensate for services rendered during 1919 and 1920, no action was taken to pay over to the estates of those who had left the company by reason of death any amount as compensation for their loyalty and service in the production of profits up to the date of their departure. That omission is conclusive, to our minds, that the 1921 vote contemplated recognition for past service only in the expectation of realizing future devotion and loyalty by employees in the production of the future success of the taxpayer.

Reading through the minutes of meetings prior to 1921, we find references to similar actions expressed as "bonus in lieu of an increase of salary," "as a reward for unusual service for the year and in lieu of an increase of salary," "as a reward for unusual services," etc.

In the vote of February 25, 1920, "the board determined to award bonuses to the employees, payable at the discretion of the treasurer," and in that of March 14, 1921, "bonuses were therefore granted to * * * all payable at the discretion of the treasurer."

The treasurer was also the president and owned 612 of the 1,500 shares of stock outstanding during 1920. Fixing merely the amounts, designating them as "bonuses," and vesting in the treasurer full discretion as to when the amounts might become payable could not vest any right in a person named to demand payment. No right accrued; no liability was incurred. The vote was executed and the payments made during 1921. The 1921 vote could not be retroactive so as to incur a liability in 1920 when no liability actually then existed. This is not a case where persons were employed under a contract whereby they were assured additional compensation as part of their remuneration for services rendered if the value of their services became reflected in a showing of profits; it was not a case of their being entitled to greater compensation as a matter of right if the event occurred of the company making profits. Additional payments were solely dependent upon the will of the three directors who owned the majority of the stock. In 1921 they benefited through these payments to the extent of $45,000, which was accordingly withdrawn from a possible dividend distribution available for

all stockholders. They were thereby put in a position to subscribe for the new $50,000 of stock issued after May 14, 1921. What should have been a stock dividend accruing to all stockholders was attempted to be made into a tax-saver for the corporation with the possibility of increasing the percentage stockholdings of the three directors and officers.

There is a marked distinction between a voluntary payment by a corporation to its employees *because* the surplus will permit the extra payment, such as existed in this appeal, and an additional remuneration to employees who were employed under a contract by which they were entitled to share in the profits if the company had profits.

On reference to the Board, ARUNDELL took no part in the consideration.